**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARZAN WILLIAMS, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. 1:21-cv-00730 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| R.A. HEISNER, et al., | ) | |
| | ) | |
| *Defendants*. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Marzan Williams brings this second amended complaint alleging violation of his constitutional rights while being held in pretrial detention at the Federal Bureau of Prisons' (BOP) Metropolitan Correctional Center (MCC) by four groups of defendants: "Individual Government Defendants" (R.A. Heisner, Dr. Brij Mohan, C. Strickland, Z. Ndife, Lt. Clark Williams, J.A. Dunn, D. Blakney, T. Miller, Dr. B. Nowakowski, J. King, who are current and former BOP employees); "Institutional Government Defendants" (BOP, the MCC, BOP North Central Regional Office, U.S. Department of Justice Marshals Service, and the U.S. Marshals Justice Prisoner and Alien Transport System (JPATS)); the United States of America (collectively, the "Government Defendants"); and Wellpath LLC, a limited liability company organized under Delaware law that contracts with BOP to manage a welfare benefit insurance plan for MCC inmates (collectively, "Defendants").

In his complaint, Plaintiff alleges that while he was in pretrial detention at the MCC he developed a painful hydrocele condition on his testicles, which the Defendants treated with deliberate indifference by failing to provide physician-recommended, medically necessary care for approximately eleven months. Plaintiff brings twelve counts against Defendants seeking redress for this injury: four actions under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971) against the Individual Government Defendants and declaratory

1

judgment that defendants R.A. Heisner, J.A. Dunn, and D. Blakney violated his state and federal constitutional speech and association rights by failing to satisfy their duties under the BOP Administrative Remedy Program (Counts 1, 2, 3, 4, and 7); a claim brought under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) and a declaration that 42 U.S.C. § 1983 violates the Illinois state constitutional right to equal protection against the Institutional Government Defendants (Counts 5 and 6); two counts under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b)(1), for negligence and intentional infliction of emotional distress (IIED) against Defendant United States of America (Counts 8 and 9); and three counts under Illinois common law for negligence, IIED, and breach of duty against Defendant Wellpath (Counts 10, 11, and 12), as well as the *Monell* claim brought in Count 5.

Before the Court are the motions to dismiss brought by the Individual Government Defendants, the Institutional Government Defendants, and Defendant United States of America. For the following reasons, the Court grants the motions to dismiss.

**Background**

On a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in the non-moving party's favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). Accordingly, the following background is drawn from Plaintiff's second amended complaint unless otherwise noted. (Dkt. 68.)

Plaintiff's pretrial detention at the MCC began on January 22, 2019. In April 2019, Plaintiff developed a testicular hydrocele, a fluid-filled sac around one of his testicles, that caused his scrotum to swell. During a BOP health services clinical encounter on April 16, 2019, Plaintiff was scheduled for a scrotal and testicular ultrasound and urology evaluation on or around a target date of May 31, 2019. Plaintiff received the ultrasound on June 7, 2019, which indicated the presence of large bilateral

2

hydroceles in both of Plaintiff's testicles that would require hydrocelectomy surgery to treat. Informed by the ultrasound and further medical appointments, the MCC utilization review committee and the BOP North Central Regional Office approved Plaintiff's surgery.

Plaintiff was scheduled for surgery on July 15, 2019. But for reasons unknown to Plaintiff, the U.S. Marshals failed to transport him to the hospital for his surgery. After four months of continuing to experience pain from his testicular hydrocele condition, Plaintiff was once again approved to receive surgery, with a date set for December 2, 2019. Ultimately, Plaintiff received the surgery on February 4, 2020, about ten months after his initial diagnosis.

Per the surgeon's discharge instructions, Plaintiff alleges that Defendants were instructed to permit Plaintiff to have a follow-up appointment one to three weeks following the surgery to monitor his condition. But Plaintiff claims that he never received a follow-up appointment and developed a post-surgical infection as a result. On May 5, 2020, Plaintiff was prescribed antibiotic medication to treat this infection. In his complaint—and described by the Court in more detail below—Plaintiff states that he submitted a series of administrative grievances to BOP officials pursuant to the BOP Administrative Remedy Program regarding his testicular pain, the delay in receiving treatment for that pain, and issues related to his sleep apnea machine.

On February 9, 2021, Plaintiff filed his first complaint pro se before the Court, after which he was appointed attorney representation pursuant to Local Rule 83.36. (Dkt. 1, 6.) Plaintiff then filed a first amended complaint on December 7, 2021. (Dkt. 32.) After cycling through several attorneys, Plaintiff was appointed counsel yet again on September 8, 2023, and filed a second amended complaint, the operative complaint for the purpose of the present motions. (Dkt. 68.)

Having been served the operative complaint, each defendant filed a motion to dismiss the relevant portions of Plaintiff's second amended complaint. In November 2024, Defendant Wellpath filed a suggestion of bankruptcy and notice of stay before the Court, which was subsequently

supplemented by an order from the U.S. Bankruptcy Court for the Southern District of Texas imposing an automatic stay on litigation involving Wellpath. (Dkt. 138.) Accordingly, the Court stayed discovery pending resolution of the proceedings in bankruptcy court. (Dkt. 139.) In January 2025, the bankruptcy court lifted this automatic stay as to claims or causes of action against the United States, its agencies, bureaus, other subdivisions, or employees in the present matter. In light of this order, Plaintiff filed a motion seeking to lift the stay of discovery as to the Government Defendants. (Dkt. 144.)

The Court now turns to these motions.

**Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529, 131 S. Ct. 1289, 1295, 179 L. Ed. 2d 233 (2011). To survive a motion to dismiss, a plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 167 L. Ed. 2d 1081 (2007) (per curiam). While a plaintiff need not plead "detailed factual allegations" to survive a motion to dismiss, she still must provide more than mere "labels and conclusions or a formulaic recitation of the elements of a cause of action" for her complaint to be considered adequate. *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).

When a complaint fails to state a claim for relief, a plaintiff should ordinarily be given an opportunity to amend the complaint to correct the problem if possible. *See* Fed. R. Civ. P. 15(a);

*Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010). But leave to amend need not be granted if it is clear that any amendment would be futile. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (citing *Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994)).

**Discussion**

The Court recognizes the seriousness and sensitivity of the medical condition at issue in this case and the frustration Plaintiff evidently felt regarding the timeline in which he was provided care for this condition. These frustrations notwithstanding, all of Plaintiff's claims against the Government Defendants contain fatal procedural or pleading flaws that necessitate their dismissal. Rather than address these deficiencies head on, Plaintiff levies a series of arguments that introduce causes of actions not stated in his original complaint and in some cases ask the Court to invent new law out of whole cloth. Aside from spurious invocations of *Marbury v. Madison*, 5 U.S. 137, 2 L. Ed. 60 (1803), *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024), the Declaration of Independence, and several other equally inapplicable cases and legal writings, Plaintiff provides no legal authority to support these arguments. Where, as Plaintiff has done here, a party offers only cursory support of its argument without adequate explanation, the Court "will not fill this void by crafting arguments and performing the necessary legal research." *Shipley v. Chicago Bd. Of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020) (quotation omitted). "Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority. *Schaefer v. Universal Scaffolding & Equip.*, LLC, 839 F.3d 599 (7th Cir. 2016). As such, the Court addresses Plaintiff's more novel arguments only to the extent necessary to explain why the underlying claim fails.

*A. Claims against the Institutional Government Defendants (Counts 5 and 6)*

Plaintiff's first count against Institutional Government Defendants is a *Monell* claim brought under *Bivens* alleging that Plaintiff experienced "repeated deprivations of his state and federal constitutional rights" due to the "employees' implementation and execution of the policy statements,

plan documents, procedural descriptions, informal customs, and decision making frameworks created and maintained by the above named Defendants." (Dkt. 68.)

This *Monell* claim fails at the launchpad. 42 U.S.C. § 1983 permits a person to bring suit against a state government official who, acting under color of law, deprives him of his rights under the Constitution or federal law. A *Monell* claim permits an individual to sue a municipality under § 1983 if it has an actual or de facto policy or custom that caused a constitutional violation. *Monell*, 436 U.S. at 690. But as the statute makes clear, § 1983 only applies to state actors. *Parker v. U.S. Department of Housing and Urban Development, et al.*, No. 24-2567, 2025 WL 654977 at *2 (7th Cir. Feb. 28, 2025) (citing *District of Columbia v. Carter*, 409 U.S. 418, 424–25 93 S. Ct. 602, 606, 34 L. Ed. 2d 613(1973)). BOP and the U.S. Marshals are federal agencies, which, despite Plaintiff's arguments to the contrary, are unambiguously not municipalities. Nor is the MCC, which is not an agency but instead the name of the building in which BOP operates. Federal officials can be liable in their individual capacities with respect to the limited set of claims cognizable under *Bivens*. *Glaus v. Anderson*, 408 F.3d 382, 389 (7th Cir. 2005). But such claims must be brought against the individuals themselves, not their employing agency.

Plaintiff argues for the first time in his response that he has a valid cause of action against the Institutional Government Defendants under 42 U.S.C. § 1985, which provides damages to individuals injured through a conspiracy to interfere with their civil rights. (Dkt. 118.) To support this claim, Plaintiff argues that his complaint "alleges the existence of two or more persons who conspired for the purpose of unjustly enriching themselves with the taxpayer dollars appropriated as health and welfare benefit funds to be administered for the benefit of prisoners." *Id.* But not once does Plaintiff's complaint use the word "conspiracy" or any of its derivations. Furthermore, § 1985 is also inapplicable to federal agency defendants, and sovereign immunity bars suits under § 1985 against federal officials acting in their official capacity. *Davis v. U.S. Dep't of Just.*, 204 F.3d 723 (7th Cir. 2000).

Even if the Court permitted Plaintiff to bring this § 1985 claim in a third amended complaint, it would fail for these reasons.

Count 6 of Plaintiff's complaint seeks a declaratory judgment that § 1983 violates the equal protection clause of the Illinois state constitution.[1] ILL. CONST. art. I, § 2. ("No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of laws."). In his complaint, Plaintiff argues that "§ 1983 unconstitutionally discriminates against federal prison inmates by irrationally denying federal inmates statutory litigation rights and remedies that the law provides to state prison inmates, and such discrimination does not further any legitimate government interest." Accordingly, in his response to the Institutional Government Defendants' motion to dismiss, Plaintiff asks this Court to "demand the that [sic] U.S. government set forth a rational basis for permitting prisoners under state custody to attack the municipal policies and customs of their prison healthcare regimes while denying such a cause of action to federal prisoners." (Dkt. 118.)

Plaintiff invokes rational basis review, *Marbury v. Madison*, and principles of federalism throughout his request for declaratory judgment. But this kitchen-sink approach does not make a

---

[1] While Plaintiff does not name any of the four groups of defendants in this claim, he does provide further argument in his response to the Institutional Government Defendants' motion to dismiss this claim. So, the Court will assume that these defendants are the desired target of this claim.

compelling argument for the extraordinary relief of a declaration from a federal court that § 1983—the cornerstone of civil rights litigation since 1871—is unconstitutional under a state constitution.

For these reasons, and because any amendment of these claims would be futile, the Court grants the Institutional Government Defendants' motion to dismiss and dismisses Counts 5 and 6 with prejudice.

B.  *Claims against the United States of America*

Plaintiff brings two claims against Defendant United States of America under the FTCA "for the personal injuries, losses, pain, loss of property, and emotional distress caused by the intentional acts of employees of the U.S. Bureau of Prisons, the Bureau of Prisons North Central Regional Office, and the Metropolitan Correctional Center in the scope of their employment": one for negligence (Count 8) and the second for IIED (Count 9).

Both claims fail for the same reason: Plaintiff did not present the administrative claim required by the FTCA to BOP.  Under the FTCA, a plaintiff may bring a tort claim against the United States only after exhausting his administrative remedies.  28 U.S.C. §§ 2401(b), 2675.  To exhaust his administrative remedies, the plaintiff must "have first presented the claim to the appropriate Federal agency so that the agency has an opportunity to meaningfully consider and address the claim prior to suit."  *Chronis v. United States*, 932 F.3d 544 (7th Cir. 2019) (citing 28 U.S.C. § 2675; *Kanar v. United States*, 118 F.3d 527, 528 (7th Cir. 1997)).  A claim has been presented to a federal agency once the plaintiff submits "an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain."  28 C.F.R. § 14.2(a).  A plaintiff must submit their claim to the appropriate federal agency "within two years after such claim accrues or

unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b).

The events described in Plaintiff's complaint took place between January 22, 2019, and June 15, 2020, placing the deadline for filing a claim at either January 22, 2021, or June 15, 2022. As noted by Defendant United States of America in its response, Plaintiff did not file an administrative tort claim with BOP regarding either of these two claims. (Dkt. 103, Ex. 1.) And though Plaintiff filed his first complaint pro se on February 9, 2021, Dkt. 1, he did not allege any claims under the FTCA until he filed his second amended complaint on November 9, 2023. (Dkt. 68.)

Still, a claim need not comply "with every jot and tittle of the rules defining a 'claim'" to provide an agency with the opportunity to meaningfully consider and address the claim prior to suit. *Kanar*, 118 F.3d at 530; *see also Chronis*, 932 F.3d at 552 (Flaum, J., dissenting) (reinforcing that Seventh Circuit caselaw on FTCA claims is "solicitous of pro se plaintiffs facing sophisticated federal agencies"). To meet the presentment requirement, an FTCA claim must contain four elements: (1) notification of the incident; (2) demand for a sum certain; (3) title or capacity of the person signing; and (4) evidence of the person's authority to represent the claimant. *Chronis*, 932 F.3d at 547.

In his response, Plaintiff argues that the Court should consider the numerous grievances that he submitted to BOP through the Administrative Remedy Program as meeting the presentment requirement. As described below in the Court's discussion of Plaintiff's claims against the Individual Government Defendants, the BOP Administrative Remedy Program and FTCA administrative claim process are two different programs, each with their own statutory basis and exhaustion requirements. But even were the Court to liberally construe Plaintiff's Administrative Remedy Program grievances as providing notice to BOP of his FTCA claims, none of these complaints contain a demand for

money damages. Instead, each complaint seeks injunctive relief, namely that BOP transport him for his approved surgery and subsequent follow-up appointment. (Dkt. 68.)

Equitable tolling of these FTCA claims is equally inapplicable. A court may equitably toll the FTCA's statute of limitations and presentment requirement when "a party has pursued his rights diligently but some extraordinary circumstance prevents him from meeting a deadline." *United States v. Wong*, 575 U.S. 402, 407, 135 S. Ct. 1625, 1630, 191 L. Ed. 2d 533 (2015). Plaintiff's unsubstantiated allegations that Defendants conspired to prevent him from filing the appropriate forms do not present an "extraordinary circumstance." Furthermore, BOP records show that Plaintiff properly filed an administrative tort claim for damages in July 2023 in a matter unrelated to the present suit. (Dkt. 103, Ex. 1.) Because Plaintiff was aware of the claim presentment process but still did not file a claim, he cannot be said to have "pursued his rights diligently."

For these reasons, the Court grants Defendant United States of America's motion to dismiss and dismisses Counts 8 and 9 of Plaintiff's second amended complaint.

## C. *Claims against the Individual Government Defendants*

Plaintiff brings five counts against Individual Government Defendants. The first four are brought pursuant to *Bivens* for violation of his Eighth Amendment right against cruel and unusual punishment (Count 1), his Fifth Amendment rights to due process and pre-conviction presumption of innocence (Counts 2 and 3), and his First Amendment right to speech and association (Count 4). The last seeks a declaratory judgment that the BOP Administrative Remedy Program violates the speech and association rights provided by the federal Constitution and the Illinois state constitution (Count 7). (Dkt. 68.)

As was the case with his FTCA claims, Plaintiff's claims against Individual Government Defendants must be dismissed because he failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"). The PLRA provides that "[n]o action shall be brought with

respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. The statute applies to both "isolated instances of misconduct as well as to official practices," *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004), and its exhaustion requirements must be met "even where the relief sought cannot be granted by the administrative process. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) (citing *Woodford v. Ngo*, 548 U.S. 81, 85, 126 S. Ct. 2378, 2383, 165 L. Ed. 2d 368 (2006)).

Only "proper exhaustion" satisfies the PLRA's exhaustion requirement, which "demands compliance with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90–91. In the context of the prison system, to exhaust his administrative remedies, "a prisoner must take all steps prescribed by the prison's grievance system." *Ford*, 362 F.3d at 397. All "available" remedies must be exhausted, and those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 988, 152 L. Ed. 2d 12 (2002).

Because the PLRA does not say when a process is "available," courts must apply the ordinary meaning of the term. *Kaba*, 458 F.3d at 684. Accordingly, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 578 U.S. 632, 642, 136 S. Ct. 1850, 1859, 195 L. Ed. 2d 117 (2016) (citing *Booth v. Churner*, 532 U.S. 731, 738, 121 S. Ct. 1819, 1823, 149 L. Ed. 2d 958 (2001)). There are three circumstances in which an administrative remedy is unavailable: (1) when (despite what regulations or guidance materials may promise) the administrative procedure operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) the administrative scheme is so opaque that it becomes, practically speaking, incapable of use; and (3)

11

when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation. *Id.* at 643–45.

The BOP's three-tiered Administrative Remedy Program is defined in 28 C.F.R. §§ 542.10–542.19. To exhaust administrative process, an inmate must ordinarily first attempt to informally resolve the dispute with institutional staff. 28 C.F.R. § 542.13. If informal efforts fail, an inmate may initiate the formal administrative process by submitting a form BP-9 detailing his complaint to the warden of the institution in which he is confined within twenty calendar days of the date that the basis of the complaint occurred. *Id.* at § 542.14. If the inmate is not satisfied with the warden's response, the inmate may file an appeal on a form BP-10 with the regional director within twenty calendar days of the date of the warden's response. *Id.* at § 542.15. If the inmate is not satisfied with the regional director's response, the inmate may appeal that decision to the General Counsel of the BOP on a form BP-11 within thirty calendar days from the date of the regional director's response. *Id.* The program also prescribes response times for each administrative tier and permits extensions if one is necessary for BOP to make a decision on an inmate's complaint. *Id.* § 542.18.

The administrative remedy process is not "exhausted" until an inmate's final appeal is denied by the BOP's Office of General Counsel. *Fredrickson v. Heisner*, No. 18 C 3582, 2019 WL 952126 (N.D. Ill. Feb. 27, 2019) (Tharp, J.). To exhaust his remedies, "an inmate need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013); *see also id.* ("Separate complaints about particular incidents are only required if the underlying facts or the complaints are different."). As failure to exhaust is an affirmative defense, the burden of proof lies with a defendant to demonstrate that a plaintiff prisoner failed to exhaust his administrative remedies. *Id.*

Defendants' motion and accompanying affidavit of the MCC administrative remedy clerk show that Plaintiff did not complete the three-tiered administrative process for any of his

administrative grievances despite receiving instructions from BOP on how to properly proceed with his grievances. (Dkt. 105, Ex. 1.) Remedy No. 988047 failed because he filed his complaint at the regional office instead of with the warden and did not take action to address that error. Remedy No. 996836 failed after he did not file his BP-10 on the proper form and Plaintiff did not resubmit his complaint as directed. And Remedy No. 1059056 similarly ended after Plaintiff failed to refile his request as directed.

Plaintiff's unsubstantiated allegations that BOP failed to comply with 28 C.F.R. § 542 do not suffice to render the Administrative Remedy Program unavailable. Rather than showing an unwillingness by the Individual Government Defendants to provide relief, the record of Plaintiff's administrative grievances shows a repeated failure on his part to complete the administrative process for each of his claims. Nor has Plaintiff demonstrated that the Administrative Remedy Program, codified by federal regulation and successfully utilized by inmates in the federal prison system across the country, is so opaque as to be practically incapable of use, let alone facially unconstitutional as he alleges in Count 7. Finally, while Plaintiff may be frustrated by the amount of time it took for him to receive treatment for his serious and sensitive medical issue, he provides no factual allegations to support an inference that the defendants thwarted his ability to utilize the administrative grievance process through threats or misrepresentation.

For these reasons, the Court grants Individual Government Defendants' motion to dismiss and dismisses Counts 1, 2, 3, 4, and 7 of Plaintiff's second amended complaint.

**Conclusion**

For these reasons, the Court grants the motions to dismiss brought by the Individual Government Defendants [104], the Institutional Government Defendants [102], and Defendant United States of America [103] (collectively, the "Government Defendants"). Because it is clear that any amendment would be futile, Counts 1, 2, 3, 4, 7, 8, and 9 of Plaintiff's second amended complaint

13

are dismissed without leave to amend. Counts 5 and 6 of Plaintiff's second amended complaint are dismissed with prejudice. Plaintiff's motion to lift stay and continue litigation against the Government Defendants is struck as moot [144]. Per the automatic stay ordered by the bankruptcy court, litigation against Defendant Wellpath remains stayed. Defendant Wellpath's motion to dismiss and strike is entered and continued pending the automatic stay [85].

**IT IS SO ORDERED.**

Date: 3/25/2025

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge